### HASLEM v JACKSON

Ohio Appeals, 8th Dist, Cuyahoga Co

No 18348.  Decided Nov 10, 1941

Bernsteen & Bernsteen, Cleveland; Harry Clark, Cleveland; H. C. Knachel, Cleveland, for plaintiff-appellee.

Paul Howland, Cleveland, for defendant-appellant.

### OPINION

By SKEEL, J.

The appellant brings this appeal upon questions of law from the judgment rendered against him by the Common Pleas Court.

The appellant is a practicing physician and surgeon. His duties make it necessary to be out at late hours during the night season. For the purpose of self-protection he carried with him on most occasions a gas gun which was made in the likeness of a fountain pen. The gas gun was loaded with tear gas and could be discharged by pulling the firing pin back and then releasing it from a cocked position.

On the day of the accident, the appellant had left his gun at home in his overcoat pocket. After he got to the office he called his wife on the telephone and requested that she "take the junk" out of his overcoat pockets and send the coat to the dry cleaner. His wife in carrying out the appellant's instructions, took the gas gun out of his overcoat pocket where he had left it and, with the rest of the contents of his pockets, placed it together with the other things, on the breakfast room table. These articles remained on the breakfast room table until about 5:30 P. M.

The appellant's wife and daughter, on the afternoon of the accident, had been out to the dressmaker. When they returned at about 5:30 P. M. they came into the house through the kitchen door, put a few packages and

their coats on the breakfast room table and went upstairs to dress for dinner.

The appellee, who was employed as a maid in the appellant's household and who was then busy preparing dinner when Mrs. Jackson and her daughter came home, stopped her dinner work to hang the coats which had been laid on the breakfast room table, in the guest room closet. She then took the packages which they had left on the breakfast room table upstairs to the rooms of the wife and daughter. She then attempted to put the gloves and what she supposed to be the fountain pen away. She picked up the supposed fountain pen along with the gloves and started to make sure that the pen was tight and would not leak, and as she attempted to turn what she thought to be the cover or cap of the fountain pen for the purpose of preventing it from leaking, the gun went off causing the injuries complained of in the appellee's petition.

The defendant-appellant contends, (1), that the court included in its instructions to the jury the doctrine of res ipsa loquitur, although at the beginning of the trial both parties agreed that the facts in the case did not invoke that doctrine; (2), that the court erred in its instructions to the jury in outlining the law with reference to the agency of the wife acting for or on behalf of her husband with respect to her household duties when the parties are living together amicably; (3), that the court's charge on contributory negligence was prejudicial to the defendant-appellant; (4), that the verdict is not sustained by the weight of the evidence; (5), that the verdict is excessive.

The first of these claims is founded on the fact that the court in describing the facts contended for by the parties, at the beginning of the charge said that the plaintiff "was injured by reason of a certain gas gun discharging itself".

The part of the sentence referred to, when read with the whole paragraph, falls far short of an attempt to charge the doctrine of res ipsa loquitur. The charge of the court, when considered in its entirety, confined the case to one in negligence, and placed the burden upon the plaintiff of establishing her claim by affirmative proof.

While the court used language in one part of the charge on the burden of proof in establishing contributory negligence, which, standing alone, cannot be supported, the court later charged clearly and correctly on this subject.

Accordingly we do not consider that the court's charge on contributory negligence taken as a whole was erroneous or misleading to the jury.

We do not find that the verdict is against the manifest weight of the evidence and by remittitur we have remedied any possible claims that could be made because of the amount of the verdict.

Coming now to the court's charge on the question of agency. In substance the jury was instructed that while the husband cannot be held liable for the torts of his wife, unless agency is established as in any other case, yet when the husband and wife are living together amicably the husband is liable for the wife's negligent acts in carrying out her regular household duties. Certainly the latter part of the rule as above stated, is not a true statement of a husband's liability for his wife's conduct in carrying out her household duties. But even though this is an incorrect statement of the law, it is not prejudicial under the facts in this case.

There is no controversy as to how or by whom the gas gun was put on the table. The defendant, by telephone, directed his wife to "take the junk" out of his overcoat pockets. He must have had clearly in mind that such instruction was intended to include the removal of the gas gun. So, by his own direction, his wife became his agent in placing the gas gun on the table.

The gas gun in question was, as a matter of law, a dangerous instrument. Mr. Justice Drew, in a dissenting opinion in the case of Scurfield v Federal Laboratories Inc., 335 Penn. 145, A. T. L. 2nd, 559, used the following pertinent

description of a gas gun similar to the one here under consideration:

"It is difficult to conceive of an article more potentially dangerous than a weapon capable of inflicting serious injury, which is deliberately disguised in the form of an innocuous every-day article."

The placing of such dangerous instrument on the breakfast room table, when in all reasonable probability the plaintiff would come in contact with it in such a fashion as to result in injury to her, while carrying out her duties as defendant's servant, without instructing or warning the plaintiff as to it's dangerous propensities, was, as a matter of law, an act of negligence, and if such act was in fact the proximate cause of plaintiff's injuries, the defendant is liable and must respond to the full extent of the damages sustained.

Such a rule is well supported by the great weight of authority. In the case of **Byrnes v Hewston, minor, 13 Oh Ap 13**, the court had before it a suit involving the following state of facts:

The plaintiff, a minor, had found some blasting caps in a vacant field, and in trying to find out what they were, caused one of them to explode whereby he was injured. The place where the plaintiff found the caps was at a point where the defendant, a contractor, had had a camp six months previous and there was evidence that the caps were scattered on the ground near where the defendant's tool box had been placed. It was undisputed that the defendant had used blasting caps in the prosecution of his work but there was some controversy as to whether the caps found by the plaintiff were of the same manufacture as those used by the defendant.

The court held that "inasmuch as the evidence showed that no other work of a similar character had been done in the neighborhood * * * the jury might properly infer that the caps were the property of the defendant and had been carelessly left by him or his ser-vants in the field * * *."

Syllabus 2:

"Ordinary care requires that dangerous instruments such as blasting caps should be cared for with the utmost caution."

A leading case defining the duty of one who has under his control or possesses a dangerous instrument or who placed such instrument in the care and custody of another is the case of **Railroad Co. v Shield, 47 Oh St 387**. In that case a companion of the plaintiff found a signalling torpedo which a servant of the railroad company had negligently left on its tracks at a point where the children and inhabitants living along the line of the track were daily in the habit of passing, with full knowledge, and acquiescence of the company. Such torpedo, a dangerous instrument, and used by the company as a signal in the operation of its trains was carried by the boys a considerable distance from the place where it was found and then caused to explode by hitting it with a heavy instrument the boys being ignorant of the dangerous character of the torpedo by virtue of their inexperience and age. The court held: (Syllabus 1)

"The law requires those who use dangerous agencies in the prosecution of their business to observe the greatest care in the custody and use of them.

2. "This duty cannot be shifted by a master from himself to servants so as to exonerate him from the negligence of the servant in the use and custody of them. Where they are so entrusted the proper custody as well as the use of them, becomes a part of the servant's employment by the master, and his negligence in either regard is imputable to the master, in an action by one injured thereby. And when the injury results from the negligence of the servant in the custody of the instrument, it is immaterial, so far as the liability of the master is concerned, as to what use may have been made of it by the servant."

The doctrine of dangerous instruments as herein applied, will be found considered by the following authorities:

Meacham on Agency, Vol. 2 (2nd) paragraph 1945, page 1512.

26 Yale Law Journal, page 224.

42 Harvard Law Review, page 269.

Restatement of the Law of Agency, Vol. 1, page 536, par. 238.

We therefore conclude that upon the face of the record, the jury was warranted in returning a verdict for the plaintiff, and that the instructions of the court upon the several subjects, as indicated by the defendant-appellant, were not prejudicial for the reasons herein set forth.

The verdict of the Common Pleas Court will therefore be affirmed as modified.

MORGAN, J., concurs.

LIEGHLEY, PJ. concurs in the opinion on the subject of liability, but dissents from the judgment of affirmance for the reason that the verdict was rendered under the influence of passion and prejudice.