567 P.2d 319

**STATE of Arizona, Appellee,**

v.

**Earl PARKER, Jr., Appellant.**

No. 3903.

Supreme Court of Arizona,
En Banc.

July 14, 1977.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III and Lynn Hamilton, Asst. Attys. Gen., Phoenix, for appellee.

Lawrence William Katz, Phoenix, for appellant.

HAYS, Justice.

Earl Parker, Jr., hereinafter appellant, was convicted of assault with a deadly weapon, to wit, a gun, by a jury in May, 1976. A previous trial on the same charge had ended in a mistrial as the result of a defense motion. Shortly thereafter, appellant was convicted of a violation of A.R.S. § 13–919, "Possession of [a] pistol by [a] criminal," by a judge of the Superior Court of Maricopa County. On the former offense he was sentenced to not less than ten years, nor more than twelve. For the latter, he received not less than four years, nine months, nor more than five years.

The appeals in both matters were consolidated and this court has jurisdiction pursuant to 17A, A.R.S. Supreme Court Rules, rule 47(e)(5).

The questions appellant raises regarding the assault charge are as follows:

1. Did the second trial violate appellant's right to be free from double jeopardy?
2. Did the state's failure to comply with the rules of discovery at the second trial so prejudice appellant that the trial court erred in failing to dismiss the charge?
3. Did the state fail to preserve vital evidence to appellant's prejudice, thereby requiring dismissal of the charges?
4. Did the jury violate the trial court's admonition not to consider the possible penalties in their deliberations?

Regarding the possession of a pistol by a criminal charge, the appellant raises these issues:

5. Was there a violation of the time limits within which appellant should have been brought to trial?
6. Did the trial violate appellant's Fifth, Sixth and Fourteenth Amendment rights?
7. Should evidence regarding the pistol have been suppressed due to an illegal search for and seizure of that weapon?

The facts of the case are that on September 13, 1975, appellant, a Negro, learned that a Caucasian neighbor, Ken Reed, had called his stepchildren "niggers." With a small derringer pistol in his back pocket, appellant went to Reed's house looking for him. Reed was across the street at the house of another neighbor, Del Lank. When he saw appellant at his door, he crossed the street and approached him. In one hand, Reed was carrying a jack handle which he'd been using on Lank's car. Lank and Reed's wife, Mary witnessed the confrontation between the two men which quickly degenerated into a physical struggle.

Appellant eventually got the better of Reed, had him down on the ground in a kneeling position, with the derringer pointed at his head. At this point, Mary Reed emerged from her home, to which she had retreated to call the police. In her hand was a .45 caliber revolver, which appellant no doubt observed. There is a discrepancy in the testimony as to whether one or two shots were fired, but as the result of at least one shot, Reed received wounds which were not fatal.

Basically, appellant's defense to the charge was that he acted in self-defense, that it was not he, but Mary Reed, who shot the victim, and that his gun merely went off accidentally when, after being hit by the bullet from her gun, the victim lurched into appellant.

The police arrived shortly after the shooting. Two officers, directed by neighbors,

went to appellant's home and found him there in the doorway. They asked where the man with the gun was and appellant replied he was the one. He was promptly handcuffed. Without reading him the *Miranda* warnings, appellant was asked by the police where the gun was. Appellant led the police to the closet where he'd placed the gun, and they seized it.

The police never retrieved the bullet that passed through and out of the victim's body. They did not confiscate the victim's clothing or the .45 caliber revolver until some weeks later, after the clothing had been washed several times and the gun might have been repaired. The gun was, in fact, later tested by the police to see if it worked. It did, but this test was not revealed to appellant's counsel until several days into the second trial. The clothing was not given to defense counsel until after the first trial had begun.

## DOUBLE JEOPARDY

■ Because the first trial was erroneously declared a mistrial, and the error was prompted by a defense motion, the second trial did not violate appellant's right to be free from double jeopardy.

Appellant successfully convinced the trial judge at the first trial that the failure of the prosecutor to present the victim's clothing to defense counsel until after trial had begun violated the mandates of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and 17 A.R.S. Rules of Criminal Procedure, rule 15.1. He argues, on appeal, that the victim's shirt was important to the defense because if it did not have powder burns on it, that would indicate there was no close-range shooting. This evidence would exculpate him, appellant alleges, and its suppression amounted to prosecutorial misconduct. As a result of that misconduct, the trial judge declared a mistrial, and a mistrial based on such misconduct bars retrial.

■ It is true that prosecutorial overreaching or misconduct which causes a defendant to move for a mistrial may bar retrial, based on the Fifth Amendment right to be free from double jeopardy. *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *State v. Madrid,* 113 Ariz. 290, 552 P.2d 451 (1976). Otherwise, a defense motion for a mistrial removes any barrier to reprosecution. *State v. Madrid, supra.*

■ Rule 15.1(a)(7) was promulgated to meet *Brady's* mandates. It requires that "[a]ll material or information which tends to mitigate or negate the defendant's guilt *as to the offense charged,* or which would tend to reduce his punishment therefor . . ." (emphasis added). must be revealed within certain time limits to the defendant. It was not violated in this case, since the charge against appellant was assault with a deadly weapon, not aggravated battery. The mere pointing of the gun by appellant at the victim constituted the assault. *State v. Gary,* 112 Ariz. 470, 543 P.2d 782 (1975), *cert. denied,* 425 U.S. 916, 96 S.Ct. 1517, 47 L.Ed.2d 767 (1976). It is an elementary legal concept that assault and battery are different acts. The assault is an offer to use force to injure another; a battery is the actual use of it on the other. *State v. Murphy,* 128 Vt. 288, 262 A.2d 456 (1970). To constitute an assault, it is not necessary that any actual injury be inflicted. *State v. Williams,* 13 Ariz.App. 201, 475 P.2d 293 (1970).

■■ The assault herein was completed when the appellant pointed the gun at Reed's head. Who actually shot Reed was not an issue in the case, nor should it have been. Therefore, the "suppression" of the clothing violated neither rule 15.1 nor *Brady v. Maryland, supra.* It follows that the trial court should not have granted the motion for mistrial, but since it did, at appellant's request, the double jeopardy prohibitions do not apply to retrial. *State v. Madrid, supra.*

## FAILURE TO COMPLY WITH DISCOVERY RULES AT SECOND TRIAL

■ After the second trial began, it became apparent to defense counsel through

answers elicited from state witnesses that the .45 caliber revolver owned by the victim and seen in Mary Reed's hand during the assault incident had been seized and tested by police. The test-firing and results had not been made known to defense counsel prior to trial.

This was, indeed, a violation of rule 15.-1(a)(3), which requires the state to reveal "[t]he names and addresses of experts who have personally examined . . . any evidence in the particular case, together with the results . . . of scientific tests, experiments or comparisons . . . ."

Again, appellant argues this information was relevant to whether appellant or Mary Reed shot the victim. While we do not condone the prosecutor's failure to reveal the test-firing, our response must be the same as it was in the first issue above. The issue was not who shot Reed. Therefore, whether the .45 caliber was in working order on September 13, 1975 was not directly relevant to the guilt, innocence or punishment of appellant for the assault.

## FAILURE TO PRESERVE VITAL EVIDENCE

Appellant asserts he was denied due process of law because of the failure of the police to seize and preserve in their physical state on the day of the shooting the .45 caliber gun, the victim's clothing and the casings of the bullets alleged to have been fired, and that this failure was a violation of rule 15.1(d), as well.

For the reasons given in the previous two sections of this opinion, we find that the items were neither vital nor material to the defense, and therefore appellant was not denied due process of law. It is equally apparent rule 15.1(d) was not violated.

## JURY VIOLATION OF COURT'S ADMONITION

In their instructions, the jury was properly admonished not to consider the possible penalties the defendant would face if convicted. During deliberations, the jury sent a note to the judge, which was, unfortunately, lost. We therefore have only the recollection of the judge as to its content to rely on, as she was the only one to actually see the note. It was her recollection that the note read:

"May we make a recommendation on the verdict?"

Both the prosecutor and defense counsel were notified, by phone, of the communication and that the judge's answer would be a simple, "No." Neither attorney objected. Despite the failure to object, appellant now asserts that the trial court erred in failing to grant him a new trial because the jury violated the court's admonition not to consider the penalty and because the court commented on the evidence by the answer it gave.

These arguments are specious. There is no presumption that jurors will betray their trust and fail to follow the instructions given them. *State v. Hilliard,* 89 Ariz. 129, 359 P.2d 66 (1961). There is no evidence in this case, pursuant to rule 24.1 or otherwise, that the jurors did not follow the appropriate instruction.

As for the court commenting on the evidence, this happens only when it expresses to the jury its opinion of what the evidence does or does not show. *State v. Godsoe,* 107 Ariz. 367, 489 P.2d 4 (1971). By no stretch of the imagination can it be said that the court herein committed that error.

Furthermore, by failing to object at the time the answer was proposed to him, appellant has unquestionably waived the right to raise the issue on appeal. *State v. Ulin,* 113 Ariz. 141, 548 P.2d 19 (1976). There was no error in failing to grant a new trial.

The next three issues concern the trial and conviction for possession of a pistol by a criminal, an act prohibited by A.R.S. § 13–919. For this trial, appellant waived his right to a jury.

## VIOLATION OF RULE 8

A few days before the last trial date upon which appellant could be tried within the time limits of rule 8, on the possession of a pistol charge, the prosecutor moved for a continuance, pursuant to rule 8.5. No opposing motion or objection was interposed, and the trial court granted the continuance for twenty-nine days. Those were excluded under rule 8.4(d).

 The day of the newly scheduled trial, defense counsel requested the dismissal of the charge because of the twenty-nine day delay in bringing appellant to trial.

Clearly, there was a waiver of the time limits set by rule 8. *State v. Brannin,* 109 Ariz. 525, 514 P.2d 446 (1973), and there was no error on the part of the trial court which refused to dismiss the charges.

Further, we find no violation of the appellant's fundamental right to a speedy trial based on the Sixth Amendment to the United States Constitution. We consider four factors dictated by the United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):

(1) length of delay

(2) the reasons for delay

(3) defendant's assertion of the right

(4) prejudice caused defendant

No one factor is controlling, and least conclusive is length of delay. *State v. Wright,* 113 Ariz. 313, 553 P.2d 667 (1976). The most important is, of course, prejudice. *Barker v. Wingo, supra.* The delay was less than a month. The reason was that the prosecutor had begun another criminal trial, the appellant failed to oppose the motion for a continuance, thereby failing to assert his right, and the prejudice alleged was "expense of time, money and anxiety."

Appellant had already been convicted of the assault with a deadly weapon charge and had been in the sheriff's custody since May 9, 1976. The state's motion was granted May 14, 1976. He was formally sentenced on the assault on June 9, 1976 for ten to twelve years, and the possession trial began June 15, 1976. Under these circum-stances, we fail to see how the delay prejudiced the appellant in preparing for or conducting his trial. *See State v. Rodriquez,* 110 Ariz. 57, 514 P.2d 1245 (1973).

There was no violation of appellant's constitutional right to a speedy trial.

## FIFTH, SIXTH AND FOURTEENTH AMENDMENT VIOLATIONS

 Appellant alleges on appeal, as he did at the trial, that he was forced to forego a jury trial because the mere reading of the information against him would have prejudiced the jury. He argues that the title, "possession of [a] pistol by [a] criminal," informs the jury of his prior conviction in violation of his right, under Arizona evidence rules, not to have the jury apprised of that fact unless appellant takes the stand. Therefore, his choice as to whether to testify in his own defense was also impaired. Thus, appellant says, he was denied his right to a jury and his right not to incriminate himself, all in violation of the Fifth, Sixth and Fourteenth Amendments.

In support of these odd contentions, appellant cites *Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). That case gives the general rule:

"The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors . . . . ." 335 U.S. 469, 475, 69 S.Ct. 213, 218.

The rule is followed by a footnote:

"8. This would be subject to some qualification, as when a prior crime is an element of the later offense . . . . ."

The elements of A.R.S. § 13–919 are (1) a person who has been previously convicted of a crime of violence and (2) who is in possession of a pistol. The previous conviction being an element of the crime charged, the general rule regarding prior crimes is totally inapplicable. *See also,* commentary to A.B.A. Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury, § 4.4.

Appellant would have been entitled to an instruction that the charge against him was

not proof or evidence of its commission. *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); Recommended Arizona Jury Instructions, Criminal Standard 1. He chose to forego that right and his right to a jury, and cannot now complain.

We find no violation of the Fifth, Sixth or Fourteenth Amendments to the United States Constitution.

## SUPPRESSION OF EVIDENCE REGARDING THE PISTOL

Finally, appellant urges that the trial court should have suppressed the weapon and any testimony regarding it because of the failure of the police officers to warn the appellant, pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before asking him where the gun was.

It is unnecessary for us to meet this issue. After waiving the jury and submitting the charge to trial by the judge, defense counsel also waived the actual appearance of all the state's proposed witnesses and stipulated to what their testimony would be. The prosecutor never introduced the gun, nor was it necessary for him to do so. What the state did introduce was the testimony of a number of eyewitnesses who saw the appellant in possession of the gun long before the police ever arrived on the scene. Defense counsel stipulated that that would be their testimony and that their credibility was not an issue. He further stipulated to the appellant's prior conviction for robbery.

It therefore becomes immaterial that the police seized the weapon after all this and failed to give the *Miranda* warnings before doing so. The crime was committed before the police arrived; that was proven by the testimony stipulated to. The trial court made no error in failing to suppress "tainted evidence" which was never introduced at trial.

Judgments and sentences affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concurring.